3-0-9-0-7-1-9 People of the State of Illinois after Lee Justin Nicolosi v. Chaiyee Chapai Appellant Jacqueline Bullard Counsel, you may proceed. May it please the Court. My name is Jackie Bullard. I'm with the Office of the State Appellate Defender, 4th Judicial District, and I represent the minor defendant in this case, Chaiyee Chapai. I intend to address Argument 1 in today's oral argument. Of course, if this Court has any questions about Arguments 2 or 3, I'm happy to answer them, but my plan was to focus on Argument 1. That argument is whether the transfer hearing in this case was fundamentally flawed, specifically whether the Court received sufficient evidence about mandatory statutory and critical non-statutory factors necessary to consideration in a transfer decision. A trial court's decision to transfer a child out of juvenile court and into adult criminal court is perhaps one of the most important decisions that a trial court makes. That decision has lifelong consequences for the minor, and it has long-term consequences for public safety. Accordingly, it's not surprising that in People v. Clark, the Illinois Supreme Court held that before a discretionary transfer may be upheld on direct appeal, that there must be evidence in the record that the juvenile judge both received evidence on every statutory and critical non-statutory factor and evidence in the record that the judge specifically considered each of these factors. The Supreme Court reiterated those propositions in People v. John Morgan, and not too long ago, a few weeks ago, this Court reiterated those principles again in the case of People v. Deontay Moore, a case that is strikingly similar to the case, the facts of this individual case. As in Moore, it involves a 13-year-old boy who was accused of committing an armed robbery in both cases. The gun was not loaded in both cases. At the transfer hearing, the state introduced no specific evidence about the rehabilitative programs that would be available if Shane were kept in juvenile court. Specifically, I think most striking is the lack of any evidence at all about the type of programming that would be available if Shane were sent to a Department of Juvenile Justice facility. Clearly, he had not succeeded on probation up until this point. But that's a tremendous leap to go from a 13-year-old boy with mental health issues can't succeed on probation absent more substantial supervision to say, we have to send this kid to adult court because there's nothing that we can do for him in the juvenile system. And in addition, no evidence about what was going to happen to him if he were transferred to adult court and had to serve a sentence in the Department of Corrections. There are a lot of things that are striking about this case. One is that not a single mention was made at the transfer hearing at all about the fact that if Shane were transferred to adult court because the robbery was committed with a firearm and the armed robbery statute, it doesn't matter whether the gun was loaded or not for purposes of an armed robbery prosecution, that he would face a mandatory minimum 21-year term of imprisonment. In fact, Shane, he wasn't admonished to that sentencing range to begin with. There was no mention of it at the transfer hearing itself. And it wasn't until about six months later, I think, that if you view Shane's record in conjunction with Denarius Kelly, who is the co-defendant, the older boy who provided the gun in this case, when you look at those records together, in Denarius's case, the state had negotiated a fully negotiated guilty plea with Denarius, had agreed that the offense was worth eight years, had pled him to eight years. And it was only after that plea was entered that the parties discovered that because the offense was committed with a firearm, that eight-year sentence was void, that the trial court didn't have the authority to impose that eight-year sentence. And then finally, in addition to not considering the relative advantages and disadvantages of juvenile court versus adult court and the sentencing range, the trial court in this case actually made an erroneous conclusion that the weapon in this case was a deadly weapon for purposes of armed robbery, not for it to be a dangerous weapon, but one of the enumerated factors in the statute that aggravates the offense and makes the case more amenable to transfer into adult court is the fact that it was committed with a deadly weapon. Illinois courts are equally clear that an unloaded weapon can be a dangerous weapon if used as a bludgeon, that sort of thing, but without proof that that weapon is able to be discharged, it is not a deadly weapon for purposes of transfer. And again, as and more, this court recognized that. So as I said, this case is virtually indistinguishable from more. The lack of gun evidence was particularly prejudicial because the trial court in this case supported the finding of transfer by properly saying I need to consider the seriousness of the offense as the most important factor in transferring the minor to adult court. And the difference between a deadly weapon and a dangerous weapon is a substantial difference in that regard. The lack of evidence on the rehabilitative services that are available and the length of the minor's sentences also directly affected the transfer hearing. It matters because in this case the court was dealing with an extraordinarily young minor, a 13-year-old boy who, if kept in the juvenile court system, could remain under the jurisdiction of the juvenile court and could be held in a Department of Juvenile Justice facility for eight years until his 21st birthday. So there's a tremendous opportunity for the juvenile system to see what they can do for this kid. In addition, by transferring him to adult court, he's going to be held in a juvenile facility until he's 17. That's required. But generally what happens within the juvenile system is for kids that are transferred kids, Department of Juvenile Justice has enough on their plate dealing with kids that they know are going to stay in the delinquency system, and most kids are transferred to an adult, most kids who are serving adult sentences are transferred to an adult facility at age 17. It is the exception rather than the rule that keeps kids in a DJJ facility after their 17th birthday. In this case, had the court not transferred Cheyenne, he would have been subject to eight years, nearly eight years of incarceration in a DJJ facility. Because of the transfer, he could spend up to eight years in a DJJ facility if we were successful in convincing DJJ that he was vulnerable enough that he shouldn't be put into an adult institution. But he's still going to have, even under the best of circumstances, even if he earns all of his good time credit, what he's going to do is he's going to have to spend about a year and a half after the juvenile court system, the Department of Juvenile Justice facility has invested in his mental health treatment and his anger management and all of the things that DJJ facilities do. This kid is going to be put in an adult prison for about a year and a half. This transfer bought the state, under the best of circumstances, about an additional year and a half imprisonment. And it's imprisonment in an adult facility with a child who suffers from mental health issues. So any good work that was done in the DJJ facility while he's being held there awaiting his adult sentence is going to be completely undone by being thrown into an adult facility with adult offenders. As I pointed out in my brief, in addition to these sort of direct effects, this case, again, it is particularly egregious, the scheme of the Juvenile Court Act. When read together and you look at the excluded jurisdiction cases, automatic transfer, presumptive transfers, the legislature frowns on the transfer of children as young as 13. The only way you can get a child into adult court at the age of 13 is through these discretionary transfer provisions. The armed robbery with a firearm is in the excluded jurisdiction statute. The child has to be 15 before that happens. The act also envisions that, in theory, a trial judge could sentence a minor found guilty of armed robbery with a firearm to probation. So this is not an offense that the legislature, when you're talking about very young children, envisions as the worst of the worst, an irredeemable child that can't benefit from remaining in juvenile court. Again, as I pointed out in my brief, I was unable to find a single case where a 13-year-old child was transferred to adult court where no one was harmed. The transfer of children this young and the imposition of sentences and exposing children to sentences of decades of imprisonment, the United States stands alone in that respect. So both in terms of, and in terms of national consensus, the majority of states don't allow the transfer and the application of these very draconian sentencing provisions to very young children. And then finally, the U.S. Supreme Court's recent cases in Roper and Graham, which both recognize that adolescent brain development matters, that the science is finally telling us what we as parents and adults have known for a very long time, that kids do incredibly stupid things. And sometimes if a child's suffering from mental illness, if a child is raised in a neighborhood where he's exposed to less than ideal conditions, sometimes those really stupid things can be really stupid, dangerous crimes. But that doesn't necessarily mean, again, that that child is irredeemable and that that child should be sentenced to the same sort of adult sentence that a hardened criminal would be. In addition, the nature of the offense, all armed robberies are serious, as the trial court observed. But in this case, as armed robberies go, the weapon was not loaded. Cheyenne didn't try to use it as a bludgeon. It was provided by an older boy who suggested the offense in the first place. There was substantial mitigating evidence in addition to just his age in this case. And then again, finally, Cheyenne has never had a chance, no one has ever tried to help to rehabilitate this child by using more restrictive means than simply a sentence of probation. Again, I think it's pretty clear that Cheyenne, for a variety of reasons, probably age and mental health issues in particular, was not successful at completing a term of probation. He needs more supervision than that. But that supervision can be provided by the Department of Juvenile Justice in this case. It doesn't necessitate a transfer to adult court. Finally, in terms of the transfer issue in this case, this is not just a matter of the minor getting a fair hearing. That's enough. But it's not just about that. It is also about the fact that bad transfer decisions make for bad public policy. They decrease public safety. They're bad for the community. And so when a transfer proceeding is flawed in the way that this transfer proceeding was, it is necessary to send the case back to do it the right way. How so? How so it's bad for the community and this and that? How so? In my brief, I cited numerous studies that talk about what happens to kids who are transferred to adult court as compared to equivalent children who are being treated. So you're talking recidivism? Yeah, absolutely. And I think communities also, it matters to them what we do with our children. Even in terms of recidivism, these children are children. They're members of our community. They're also very dangerous to the community. They put the public at risk. Absolutely. And that's the reason. So isn't there a countervailing concern as well? That's why the availability of a DJJ sentence is the ideal solution in this case. It allows, if this child is able to stay in a confined facility, he is currently at Kiwani, that is a concrete facility with metal slab beds and barbed wire around, then he's in prison. Basically from the public's perspective here, going into adult court, it's just a year and a half longer sentence in adult court as opposed to 3.2 in a DJJ facility, correct? Yes, in theory it is. Yeah, assuming good time credits. Yes, assuming good time. This adult sentence is just not buying the state that much more time out of the community. A year and a half by your calculation. Yeah, a year and a half. And I think that the state pretty much conceded that in its brief as well. This young man I know had had a couple of other station adjustments and one adjudication of delinquency for a retail theft. Yes. There was no use of violence or anything in connection with that offense, was there? No, there wasn't. His probation revocation was for resisting arrest, and that was for pulling away from an officer who had grabbed him. And I have to concede in fairness, he's getting in fights at school, which they're not the sort of fights that have risen to the level of the state feeling like they needed to file charges under those circumstances. But he absolutely has some anger issues. If this court has no further questions, then I respectfully request that this case be remanded for a new transfer hearing. Thank you. Counsel. Good afternoon, Your Honors. May it please the court. May it please counsel. Your Honors, the people are well aware of the Moore decision that came out recently. People obviously can see that the cases are remarkably similar. So I will keep my arguments very brief here. But there are a couple of things that I would like to point out with the Moore decision that the people really have questions with. The first is a statement on page 10 of the Moore decision regarding the minimum and maximum sentences as a non-statutory factor that should be considered. The quote is, and I quote, Our Supreme Court has stated that the minimum sentence or term of years the defendant would have to serve under the criminal code should be considered as a factor in addressing and weighing the competing interests to see Clark 119-14. The people don't believe that that's what Clark stands for. The people believe that Clark should stand for, it should be considered narrowly to the facts of that case. In that case, the juvenile was facing mandatory life in prison. And so the choice there was either the juvenile serves a sentence of juvenile detention or mandatory life in prison in adult facilities. There's no wiggle room there. In this case, obviously the individual was facing 21 to 45 years. But nevertheless, it's not a natural life in prison. And the people believe that Clark should be interpreted on its facts and not expanded as people believe the Moore court has done. And with that fact, the people would submit that in passing, the trial judge here did consider the sentence that the juvenile was facing. The judge even said that the defendant was facing one of the most serious crimes or committed one of the most serious crimes that a person could commit. The judge clearly knew that this was a very serious crime that carried very serious penalties. He had this in his mind when he was making the decision. Therefore, he considered the penalties available. The judge didn't say anywhere in the record that he was considering a sentence between 6 to 30 years. No, no, Your Honor. He did not say this specifically. And he didn't say that there could be a mandatory enhancement of 15 years, did he? No, he did not, Your Honor. And doesn't Clark say that just because you recite in the record that you've considered things, if you don't specifically recite those things in the record, you haven't really, there's not sufficient evidence that you do consider that? Yes, I understand, Your Honor. But, again, people would submit that Clark should be read narrowly to, it's not requiring that every judge put on the record that the minimum maximum sentence is, it's still not a statutory fact of the legislature. Clark was in 1987. The legislature still has not made this a factor on the list in the statute in Section 5-805, subsection 3. It still has not made that a factor. The people submit that Clark should be read pursuant to its own facts and not expanded because the court does not say that it should be expanded in that way. In this case, there was no evidence of any advantages of any treatment plan in the juvenile justice system, whether there were facilities programs or anything like that available. I understand, Your Honor. And, you know, there was no discussion, and that's one of the statutory factors. Oh, definitely, definitely. And where's that on the record? I understand. I don't have a good answer for that one, unfortunately. Another point that I'd like to make concerning more unpaid gains, it states, and do with this what you will, Your Honors, but it states in paragraph 21, quote, this court must determine if there was sufficient evidence in the record as to each statutory factor to support the transfer order. We believe that language is not exactly stating the law correctly. Cases like Taylor say that there does not need to be evidence of each factor in support of transferring the defendant. Every factor does not need to lay in favor of transfer. And this quote, the people would interpret it as saying that there needs to be evidence in the record of each statutory factor to support the transfer order. People believe that's incorrect. What effect that has on the outcome of this case is up to the court to determine. But we felt that it was necessary to point that out. But as Your Honor pointed out, there's no evidence presented as to that factor. And again, this case is similar to Moore, but the people felt it necessary to flush out these problems that we believe that Moore carries. People also would like to point out that with regard to putting the trial judge's considerations of each factor on the record or evidence on the record, this doesn't exactly comport with cases in other areas. For example, in the Montgomery test with regards to prior convictions used to impeach, the trial judge does not need to state that he was- Yeah, but we can't reverse Clark, can we? Isn't the fact that mere recitation of the record that the factors have been considered is not enough? That's language from Clark, isn't it? It is. And that's from the Supreme Court. It is. So that fights with the Supreme Court, not with us, isn't it? That's true. That's true. We'll be moving on now. Okay. And finally, as a remedy, one more quarrel with Moore here. People feel that the remedy that the court suggested was a little incomplete, maybe, is the right word. What the people would suggest that's done in this case, as we read more, it sounds as though it will be remanded back for transfer here. And then it kind of doesn't instruct the court as to what happens at that point. The people believe that this case, the remedy in this case, should be handled like the stun belt cases or the fitness cases, the fitness hearing cases, where the remand should be for a retrospective hearing and that, in this case, they'll go back and have the transfer hearing. And if the trial judge determines, based on hopefully the evidence will be presented according to the law, and if the trial judge determines that transfer was appropriate and it should be transferred to criminal court, that the convictions for this crime should be upheld. And that, just like in Johnson, third district case in 2005, retrospective boost hearing, after the hearing, basically things that happened subsequent to the hearing, below the first time, were upheld. And same thing in the Supreme Court case of People v. Neal in 1997, that was a retrospective fitness hearing. Basically, the hearing should not, if the transfer is determined to be appropriate, nothing regarding the proceedings in the adult court should be disturbed. That's it. Anything else? That's it. Thank you, Counsel. Thank you. Counsel? I would like to just quickly address the state's three concerns about the Moore opinion. Even if this court, this panel disagrees with the Moore panel, that a minimum sentence, a large minimum sentence should be a freestanding, non-statutory factor. That sentence is still necessary under the statutory factors listed in the transfer statute. In particular, the transfer statute requires the court to consider the adequacy of punishment or services in DJJ, in juvenile court and in adult court. If you don't know that a child is facing a 21-year minimum term of imprisonment, there's no way that you can determine whether the punishment in adult and juvenile court is adequate or not. So that the minimum term sentence actually, although not expressly listed in the statute, is contained in the statute. Wouldn't you say that's included when you're required to consider the advantages of treatment within the juvenile justice system? So how can you consider an advantage of treatment if you don't compare it to the adult treatment? How do you consider whether something's an advantage or not? Absolutely, Your Honor. I think that that's another factor that this lengthy minimum term of sentence, that this lengthy term of minimum sentence applies to. How do you know how to rehabilitate this kid if you don't even know how long he's going to be in a juvenile facility and how long he's going to be in an adult facility? The state also takes issue with the notion that a trial court must consider evidence on each factor. The discretionary transfer statute, before listing the specific factors that need to be considered, subsection 3B provides that the court shall consider among other matters, and then it lists these factors. Again, how can a court consider a factor that it's required to consider if there's no evidence on the factor that it's required to consider? The statute itself provides, even if the case law maybe doesn't clearly hold that, which we maintain that it does, the statute itself implicitly requires evidence because it says the trial court has to consider each of these factors. And then finally, I take issue with the remedy that the state is requesting. If what the state means by a retroactive transfer hearing is that the trial court may only consider the factors that existed at the time of the original transfer, those are clearly relevant factors, but in this case, the decision whether to transfer a child to adult court is a matter of incredible importance. And if Shaim's been behaving himself and staying with the program and getting his mental health treatment and doing well in the juvenile system, the trial court should not be deprived of that information. That is incredibly relevant information to the decision about whether this child needs to be transferred to the adult system or not. So again, if what the state is asking for is to be able to take a second bite at the apple at this hearing, and they can introduce more evidence that existed at the time of the original transfer hearing, but the minor can't introduce evidence that he's been doing well in DJJ, it's just fundamentally unfair to him and to the trial court because it deprives the trial court of necessary information. I thought he was asking that if it's reversed, not that it should be reversed from his argument, but if it is vacated, the transfer, that it go back for a transfer hearing. But if the juvenile is transferred, then his argument is that everything that happened after the transfer before would stand. That's his argument, isn't it? I mean, if that's it, if after a new transfer hearing, Cheyenne is again transferred to adult court, yes. I mean, the trial court certainly has the discretion to do another transfer, although if the evidence is the same as it was at the first transfer hearing, we'll be back. Does this court have any further questions? Thank you very much. Thank you, Counsel. I guess we're adjourned for the day. We'll take this case under advisement and render a decision with dispatch post-haste.